UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FELIPE G. VARGAS,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>THOMAS F. EARL, et ux; GRANT COUNTY, et al,<br><br>　　　　Defendants. | )　CV-06-146-JLQ<br>)<br>)<br>)　MEMORANDUM OPINION AND<br>)　ORDER DENYING DEFENDANT<br>)　GRANT COUNTY'S MOTION FOR<br>)　SUMMARY JUDGMENT,<br>)　GRANTING IN PART PLAINTIFF'S<br>)　MOTION FOR PARTIAL SUMMARY<br>)　JUDGMENT, AND DIRECTING<br>)　FURTHER BRIEFING<br>) |

**Before the Court** are Defendant Grant County's Motion for Summary Judgment (C.R. 64) and Plaintiff's Motion for Partial Summary Judgment (C.R. 68) heard telephonically on March 25, 2008. George Ahrend appeared on behalf of the Plaintiff. Defendant Thomas Earl was present telephonically. Gail Earl did not appear. Joshua M. Joerres appeared on behalf of Defendant Grant County, along with Francis Floyd.

Having reviewed the record, heard argument of counsel, and being fully advised in this matter, **It Is Hereby Ordered** that Defendant Grant County's Motion for Summary Judgment is **Denied** and Plaintiff's Motion for Partial Summary Judgment is **Granted, in part**.

## SUMMARY JUDGMENT STANDARD

In this Opinion, the court, of course, must credit the respondent with all reasonable inferences from the genuine issues of material facts as set forth in the affidavits, depositions, and documents submitted by the respondent. F. R. Civ. P. 56(c). A genuine issue of material facts exists when there is "sufficient evidence favoring the

non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial.  The non-movant must, however, do more than show that there is some abstract doubt as to the material facts.  It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment.

## BACKGROUND

Plaintiff filed this federal civil rights and state law negligence action claiming that he received ineffective assistance of then court-appointed, now disbarred counsel Thomas Earl. following his arrest for alleged child molestation in Grant County Washington in November, 2003. He was incarcerated for seven months before the charges were dismissed with prejudice.   He claims that, in addition to Mr. Earl, the following parties are also responsible for his damages: Grant County and the County Commissioners for hiring and failing to supervise Mr. Earl, who was hired as the County Defender; the State of Washington for creating a system of public defense that was indifferent to the quality of representation; and approximately 20 other individuals for various reasons. On September 30, 2004, he served a pre-suit notice of claim with Grant County in compliance with R.C.W. 4.96, concerning negligence claims against a municipality.  He did not receive a response to that claim from the county.

### I.  Factual Background

The following are the claims of Mr. Vargas.  Plaintiff Felipe Vargas is a long-time resident of the United States and a legal immigrant from Mexico, who came to this

country more than 20 years ago. On November 5, 2003, CMS, then age 12, contacted Sgt. Randy Coleman of the Quincy Police Department and reported that Felipe Vargas had touched her and her sister, YV, a deaf mute and then age 17, in a sexually motivated manner. The sisters' mother was the girlfriend of Mr. Vargas. Sgt. Coleman of the Quincy, Washington police department talked with both girls briefly that day and completed an Offense Report, which he forwarded to the Grant County Prosecuting Attorney with a recommendation to charge Mr.Vargas with one count of second degree child molestation and one count of indecent liberties. There is no evidence that this officer talked with the girls' mother or with Mr. Vargas or that any medical examination of the girls took place.

The next day, based on the police report, the prosecuting attorney of Grant County charged Mr.Vargas with 3 felony counts, one of first degree child molestation, one of second degree child molestation, and one of indecent liberties. Based on these charges, a warrant for the arrest of Mr. Vargas was issued with bail set at $30,000.

November 6, 2003 was Mr. Vargas's birthday and he went to dinner in Moses Lake with his girlfriend, Ms. Velasquez, the mother of the two girls, with whom he lived and shared household expenses and chores. After dinner, they returned to their home in Quincy to find that Police Sgt. Coleman had left a calling card on the door with a handwritten message that the two girls were with him. Immediately concerned, both Mr.Vargas and Ms. Velasquez went to the Quincy Police Station. When they arrived, officers executed the warrant, arrested Mr. Vargas and placed him in jail where he remained for the ensuing seven months. When arrested, and throughout his seven months of incarceration, Vargas proclaimed his innocence. He passed two polygraph examinations. The only evidence against Vargas was the alleged statements of the minors, shortly thereafter recanted by CMS and by her sister, YV, using sign language. There was no physical evidence to support their initial claims.

Within days following the arrest of Mr. Vargas, CMS, the youngest of the alleged victims, told her mother, family friends, a caseworker, the prosecuting attorney's victim-witness coordinator, and Sgt. Coleman of the Quincy Police Department that she and her sister had fabricated all the accusations against Mr. Vargas. However, this critical information was not passed on by the prosecuting officials to Mr.Vargas, who was in jail, to his attorney, or to the court at any of the times the court was setting bail or ruling on associated matters until Mr. Vargas had been held in jail for some seven months. The recantations were disclosed only after attorney Earl had been disbarred and a new attorney appointed for Mr. Vargas. The new attorney, Garth Dano, immediately demanded the opportunity to interview the alleged victims, which then finallyled to the release of Mr. Vargas from jail and the dismissal of the charges with prejudice.

On November 7, 2003, at his initial court appearance, no attorney was present to represent Mr. Vargas. The prosecutor told the court that Mr. Vargas faced a substantial prison term, would be subject to deportation, and would be a substantial flight risk. The court was not informed that Mr. Vargas was a long-time resident of the area and was steadily employed. The court granted the prosecutor's motion to increase his bail from $30,000 to $100,000, without giving Mr. Vargas any opportunity to respond. The court also prohibited Mr. Vargas from receiving any telephone calls or visits from Ms. Velasquez, based on representations from the prosecutor that Ms. Velasquez had attempted to visit the jail, allegedly creating problems because she was a potential witness as the mother of the two alleged victims with direct control over them. Unknown to the court, the girls had been removed from their mother's home and CMS had recanted all the accusations about Mr. Vargas previously made by she and her sister.

It is uncertain if at the time of the November 7, 2003 court hearing, the prosecutor or his agents had been informed of the recantation of the alleged misconduct, however, it is clear that at least shortly thereafter, this information was in the hands of the

investigating agents and the prosecutor who never communicated it to the court or the defendant. The court on November 7, 2003, stated that "we had better appoint him an attorney if we're not going to let him out." The court then appointed Thomas Earl, who held the exclusive contract for felony public defense services in Grant County since 2000, to represent Mr.Vargas and continued the arraignment again to November 10, 2003, when Mr. Earl could allegedly be present. Mr. Vargas was again remanded to jail. On November 10, 2003, Mr. Earl failed to appear and the court continued the arraignment again to November 12, 2003. Mr. Vargas was returned to jail. Throughout these proceedings, and to this date, Mr. Vargas has continuously denied the allegations allegedly made against him by his girlfriend's daughters.

Some six months prior to the time of his appointment to represent Mr. Vargas, Mr. Earl had been recommended by a Washington State Bar Association (WSBA) hearing examiner to be disbarred. This fact was known to the prosecutors and County Commissioners who had the responsibility for providing legal counsel for those charged in that County. Also known to the County Commissioners of Grant County at this time was the fact that in two prior instances, findings had been made by the Washington State Court of Appeals (C.R. 88-4) and this United States District Court per Judge Edward Shea, (C.R. 88-3) that Mr. Earl had failed to render effective assistance of counsel to Grant County indigent defendants by reason of his failure to investigate and prepare for the defense of his court-appointed clients.

On November 12, 2003, Mr. Earl did appear in court and without speaking to or introducing himself to Mr. Vargas, entered a "not guilty" plea on his behalf. Earl then moved unsuccessfully to have Mr. Vargas' bail reduced, although he had never spoken to Mr. Vargas or reviewed or solicited any information about him from Mr. Vargas personally or from his family, friends, or employer. He did not speak to Vargas, before, during, or after the hearing. Earl stated in open court "I don't know much about this

case." It appears that the alleged victim, CMS, had by this time recanted her allegations and those of her sister to police and prosecuting officials. The prosecutor did not inform the court of this fact nor did he inform Mr. Earl or Mr. Vargas of this fact. Only after Vargas had been in jail for some seven months, Mr. Earl disbarred, and a new attorney appointed to represent Vargas did the prosecutor reveal this obviously critical information, and then, only when the new defense attorney insisted on the right to interview the alleged victims. When this recantation information became known to the court and the defense, Mr. Vargas was immediately released from jail and the charges thereafter dismissed with prejudice.

At the November 12, 2003 court hearing, the prosecutor represented to the court that Mr. Vargas had nothing in the way of permanent ties to the community, contrary to the fact that Mr. Vargas had lived and worked there for approximately 20 years. Having not even spoken to Mr. Vargas, much less talked with his family, friends, and employer, Mr. Earl did not challenge the prosecutor's statement. The court refused to lower the $100,0000 bail. Because Mr. Vargas could not afford the bail or purchase a bond, he was returned to jail, were he remained without any further communication from Thomas Earl until December 9, 2003.

Meanwhile, in mid-November, 2003, Thomas Earl's son Ryan, operating as a legal intern to his father, but who had not yet passed the bar examination, visited Mr. Vargas in jail and Vargas gave him the name of witnesses to interview thinking that Ryan was his attorney. Ryan said he would interview the witnesses. However, neither he nor his father ever did so nor did they ever seek to interview the alleged victims or their mother.

On November 24, 2003, Thomas Earl filed a formal Notice of Appearance on behalf of Mr. Vargas. On that same day, the WSBA Disciplinary Board approved and adopted a recommendation from its Hearing Examiner to disbar Mr. Earl from the

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
GRANTING PLAINTIFF'S MOTION IN PART and DIRECTING FURTHER BRIEFING–6


practice of law in the state of Washington, based upon, *inter alia,* findings that Mr. Earl had requested payment of monies from the Defendants he had been appointed to represent pursuant to his contract with Grant County.

A pretrial conference was held December 9, 2003, three days before the scheduled trial date. Thomas Earl appeared, was introduced to Mr. Vargas for the first time, and told him "I'm your attorney". This surprised Vargas, who thought Ryan Earl was his attorney. There was no further conversation between the two of them. Mr. Earl told the Judge that "the discovery process is complete and I have reviewed the items in the State's file," although the State had not provided the complete file and Mr. Earl had conducted absolutely no investigation of the matter, had interviewed no witnesses, and had made no request for the prosecutor to produce the alleged victims for interviews. The prosecutor continued to withhold from the court and Mr. Earl the recantation of the allegations of CWS including her statement that her sister had also fabricated the allegations. Based on the representations of Mr. Earl as being prepared for trial and the withholding of the recantation evidence by the prosecutor, the court set the trial for December 12, 2003, three days after this conference, without any objection from Mr. Earl.

Vargas was again returned to jail and had no further contact with Thomas Earl before the scheduled December 12, 2003 trial. On the scheduled trial date of December 12, 2003, Mr. Earl spoke to Mr. Vargas for about 5 minutes, allegedly showed absolutely no interest in the underlying facts, and ignored all attempts by Vargas to tell him he was innocent. Instead, he urged Vargas to plead guilty by saying "things looked bad for him". He told Vargas that he would be out of jail in 6 months if he pled guilty, much sooner than if he went to trial, and that his guilty plea would not affect his immigration status. These representations, particularly as to Mr. Vargas' status in the United States, were false.

Earl then moved for a trial continuance by unilaterally requesting a Special Sex Offender Sentencing Alternative, without consulting with Vargas.  This alternative follows a plea of guilty, generally suspends a prison sentence, and requires an evaluation for the suitability of someone for treatment.  Earl also waived Vargas's right to a speedy trial for almost 6 months until June 1, 2004, allegedly coercing Vargas to sign a speedy trial waiver.  Throughout these proceedings, the prosecutor continued to withhold the information as to the recantation of CWS on behalf of herself and her sister. Vargas was again returned to jail. He never saw Thomas Earl again.

Mr. Earl obviously was preoccupied with WSBA disciplinary proceedings and on December 15, 2003, the WSBA filed a Petition with the Washington Supreme Court for his suspension from the practice of law. In early January, 2004, Ryan Earl met with Vargas for 5 minutes and allegedly promised he would investigate the case, but never did.

On February 11, 2004, the Washington Supreme Court suspended Thomas Earl from the practice of law and on February 17, 2004, Grant County terminated his contract for public defense services.  At that time, Earl was representing hundreds of people accused of felonies in Grant County.  The Superior Court judges of Grant County then "conscripted" 49 different attorneys to take over representation of those hundreds of persons.  The County Commissioners disputed the authority of the judges to authorize hourly rates for those attorneys and demanded that these newly appointed attorneys only be paid at the rate of $550 per case, which would allow them to spend approximately 3-4 hours on each case, regardless of the nature of the charges or the possible consequences.

On March 16, 2004, the Superior Court appointed one of these attorneys, Steve Talbot, to represent Mr. Vargas. On March 22, 2004, Mr. Talbot appeared in court on Vargas' behalf but informed the court that he lacked the criminal defense experience necessary to represent Vargas.  Again the prosecutor continued to withhold from the

court and the defense the fact that CWS had recanted the allegations and had stated that her sister had likewise fabricated the allegations. Vargas was again returned to jail.

The court then appointed attorney Garth Dano to represent Vargas. Mr Dano was not present when he was appointed, and did not learn of the appointment right away. On April 2, 2004, Mr. Dano filed a notice of appearance on Vargas's behalf. However, the Grant County Prosecutor resisted this appointment stating that Mr. Dano, who had prior criminal and trial experience, had been appointed by the court rather than hired by the County Commissioners and that he was "too expensive" . However Mr. Dano remained appointed counsel. The prosecutor continued to withhold from the court and Mr. Dano the fact that CWS had fully recanted her prior allegation against Vargas.

Mr. Dano then asked the Grant County prosecutor for full discovery in this case and the opportunity to interview the alleged victims. The prosecutor delayed discovery in the case. Mr. Dano asked the prosecutor on multiple occasions to arrange interviews of the state's witnesses. On May 18, 2004, after the prosecution had promised to make the witnesses available, the prosecutor stated in open court "This is no fault of Mr. Dano's. He's been very assiduously performing discovery in this case. I apologize to him, we were simply not able to get these interviews done. They are absolutely essential to preparation of the case, and I've told my victim-witness coordinator that we have high hopes of getting them done this afternoon."  However, the interviews still did not happen and again no disclosure of the recantations was made to the court or the defense.

On May 18, 2004, the Superior Court denied Mr. Dano's ex parte motion for appointment of a Spanish speaking investigator to help with the interviews but granted it one week later. Mr. Dano then interviewed the witnesses and learned that the complaining witness CMS had recanted all her allegations to family, friends, police, and the prosecutor's victim witness coordinator nearly 7 months earlier. Mr. Dano immediately moved the court to release Mr. Vargas, based on the witness's statement.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
GRANTING PLAINTIFF'S MOTION IN PART and DIRECTING FURTHER BRIEFING–9

The court ordered Vargas released without bail on June 7, 2004 and the charges against him were dismissed with prejudice on August 31, 2004, undoubtedly by reason of the fact of the recantation being made known to the court and the defense.

Mr. Vargas contends that the seven months he claims he wrongfully spent in jail deprived him of normal freedom and the enjoyment of that freedom, which prevented him from visiting his father, who was on the brink of dying, and because of being in jail, he lost his job at J.R. Simplot Company, which paid him $12.41 an hour. When he was released from jail, Simplot had been purchased by Quincy Foods, who retained all Simplot workers, but since Vargas was not working there at that time, they had no obligations toward him. Instead, when he was released from jail, they offered him a janitorial job that paid 8.00 an hour. He worked there as a janitor until November 24, 2003. He currently works 14 hours a day at $7.31 an hour in an agricultural job.

Mr.Vargas then filed this action claiming violation of his civil rights against the community composed of Mr. and Mrs. Earl, Grant County and, the State of Washington. He alleges professional malpractice, breach of fiduciary duties and the Washington Consumer Protection Act against Mr. and Mrs. Earl, and § 1983 and negligence actions against Grant County and the State. He has not yet alleged the liability of Grant County for wrongful prosecution, based upon the failure of the prosecutor to disclose the victim's recantation to the court and the defense throughout the seven months that Mr. Vargas was held in jail. However, he has now given notice of his intent to move to amend in order to do so.

## II. The Liability of Grant County

Mr. Vargas alleges that Grant County is liable under 42 U.S.C. §1983 for its failure to provide competent defense counsel for individuals charged with and incarcerated for alleged felony offenses in Grant County and its alleged deliberate indifference to the lack of effective assistance of counsel at the hands of Mr. Earl. On

June 26, 2001, Grant County entered into a five year contract with Mr. Earl whereby Mr. Earl agreed to provide all felony defense services for all indigent defendants, including attorneys, investigators, expert witnesses, office space, and staffing for an annual fee of $500,000. In the year 2003, the year in which Mr. Vargas was charged, over 1,000 individuals requiring a public defender were charged in Grant County with felonies, computing to a fee of less than $500 per case, including all investigative, expert witness, pre-trial, trial and post-trial attorney representation plus Mr. Earl's expenses for providing a law office. Mr. Vargas alleges that such a contract and felony caseload evidences a deliberate indifference by Grant County to the consequences of such a contract and resultant caseloads, and that such caseloads, in and of themselves, are so far outside what can be reasonably handled by one attorney and those he may hire at his expense from his annual fee as to constitute deliberate indifference to the adequacy of representation afforded persons so charged.

  While not of dispositive influence, the court notes that the 2000 Census for Grant County showed a total population of 74,000 men, women, and children. With over 1,000 felony charges being filed in that county each year, such would mean that each year one (1) of every seventy-four (74) persons present in that county, including children, would be charged with a felony. Such criminal filings mandated close attention by the County Commissioners to the adequate provision of defender services. It appears from the record that the Prosecuting Attorney, the very office filing the over 1,000 felony charges each year in this relatively small county, played an important and apparently determinative role in the funding decisions for the provision of defender services. (See. C.R. 88-13, Ex. 26-portions of deposition of Stephen Hallstrom.) The contract with Mr. Earl obligated him to defend any and all felony charges filed by the Grant County Prosecuting Attorney who, by reason thereof and as born out by the filing of over 1, 000 felony cases each year, felt unrestrained in the filing of felonies by reason of the limited

defense expense to the County.  (See deposition excerpts of John Knodell, C.R. 88-13, Ex. 23).

The affidavits provided by the Plaintiff, including those of Professor and attorney John Strait, establish that more likely than not, if the jury accepted the testimony submitted by the Plaintiff as to the actions or inactions of Grant County related to the provision of adequate and effective legal defense services, a finding of deliberate indifference thereto would be warranted.  Grant County relies upon *Monell v. New York*, 436 U.S. 658 (1978) and *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) for the unchallenged proposition that a municipality may not be held liable under § 1983 solely on the basis of *respondeat superior*. However, in this action Grant County is a named defendant by reason of its own actions in allegedly failing to provide the constitutionally mandated right to effective assistance of counsel through the failure to observe and react to what surely must have been the obvious inadequacy of its alleged provision of counsel.  Such actions, or inactions, were by the decision-maker, Grant County, who was charged with the obligation to see that effective counsel was provided for those charged by the Grant County with felonies and incarcerated as a result of such charges.  The evidence submitted by the Plaintiff is sufficient to submit that question to a jury. The evidence establishes that Grant County was aware of the excessive number of cases being handled by Mr. Earl pursuant to the contract with the County; that Mr. Earl had been found to have failed to provide effective assistance of counsel by both the Washington State Court of Appeals and this federal court; and that Mr. Earl had been recommended for disbarment at the time he completely failed to assist Mr. Vargas within appropriate legal standards.  The Motion For Summary Judgment by Grant County must be and is Denied.

In addition to the foregoing, at oral argument the court raised the issue of the possible violation by the Grant County prosecuting authorities and the police officers

involved in the prosecution of Mr. Vargas' rights to due process, specifically, the failure of such officials to inform the court, the Defendant, and defense counsel of the alleged recantation of the alleged complaint by CMS, individually and on behalf of her sister, an obviously material and critical matter. It is clear that under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Brady's* progeny, police, prosecuting agencies, counties, and states violate due process when it suppresses and/or fails to disclose material exculpatory evidence. The due process violation occurs whenever such material evidence is withheld and the good or bad faith of the prosecution is irrelevant. *Illinois v. Fisher*, 540 U.S. 544, 547 (2004). It is also clearly established that the prosecutor has an obligation to disclose clearly exculpatory information in his possession or in the possession of investigating officers or agents, **even absent a formal *Brady* request from the defense.** *United States v. Agurs*, 427 U.S. 97, 106 (1976). At the request of the court, counsel for the Plaintiff has filed a statement of his intent to move to amend the Complaint to incorporate this claim against Grant County and its prosecutor. However, counsel's statement states that such a motion will be filed "after completion of mediation," without any statement as to the date of mediation. The court believes the mediation is scheduled for this month. If mediation is not successful, the motion to amend should be filed forthwith, in view of the June, 2008 trial date and any discovery which may be required on the recantation and due process issue.

The court also concludes that the Plaintiff's the state law claims against the County are sufficient for the reasons above-stated.

### III. Plaintiff's Motion For Partial Summary Judgment

Plaintiff seeks partial summary judgment of, *inter alia,* actual innocence.

Grant County and the Earls contend that a criminal defendant is required to prove by a preponderance of the evidence that he was actually innocent of the underlying criminal charges as a prerequisite to a legal malpractice claim against his former defense

counsel. *Ang. v.Martin,* 154 Wn. 2d 477, 486 114 P.2d 637, 642 (2005). However, counsel for the Plaintiff calls the court's attention to the more recent Washington State Court of Appeals case of *Powell v. Associated Counsel For The Accused,* 131 Wn. App. 810, 120 P. 3d. 831 (2006) holding that the actual innocence issue does not apply to cases alleging unnecessary lengthy incarceration. Without ruling thereon, the court has in mind that Grant County has belatedly claimed that the oldest sister has now been located and that she will now testify to the validity of her original indecent liberties claim. However, at the time of closing of the filing of F.R. Civ. P. 56 summary judgment evidentiary submittals, there was absolutely no evidentiary basis to suggest that Mr. Vargas was guilty of the crimes with which he was charged and all charges against him were dismissed with prejudice. The defense does not contend to the contrary. It relies upon the hearsay statements of the sisters allegedly made to Sergeant Coleman, which the court has ruled are insufficient to establish the guilt of Mr. Vargas unless such evidence is directly supplied by the alleged victim(s). The court reserves ruling on the actual innocence claim.

Defendants have also alleged affirmative defenses based on the statute of limitations and/or repose. However, the Defendants have failed to identify a relevant statute of limitations or a factual basis therefore. The shortest limitation period applicable to this case is three years after Thomas Earl was first appointed to represent the Plaintiff. That three year statute applies to the claims of ineffective assistance of counsel, legal malpractice, and for breach of fiduciary duties, as well as the claims against Grant County for negligent hiring, supervision and retention. The statute of limitations is four years for violation of the Washington Consumer Protection Act. These affirmative defenses therefore fail on both factual and legal grounds and summary judgment is granted the Plaintiff on such claims.

The Defendants further contend that the real person at fault in this case is the non

party attorney Garth Dano, the attorney appointed following Mr. Earl's disbarment. However, they provide no evidence of any kind that this is the case and have withdrawn this claim. Summary judgment is granted the Plaintiff on that defense.

Grant County also alleges affirmative defenses of waiver, estoppel, and laches. However, there are no facts supplied in this case to support such defenses. These defenses except waiver, have also been withdrawn and there is nothing in the record to support the claim of waiver. Summary judgment is granted the Plaintiff on these alleged defenses.

The Earl Defendants herein have alleged as a defense the "failure to exhaust administrative remedies." Such a defense is clearly inapplicable to the malpractice claims against the Earls and summary judgment is granted dismissing such claimed defense.

Grant County's Motion for Summary Judgment is Denied. The Plaintiff's Motion For Partial Summary Judgment is Granted, in part, as stated herein.

The Clerk of this court shall enter this Order and forward copies to counsel.

Dated this 11th day of April, 2008

                s/ Justin L. Quackenbush
              JUSTIN L. QUACKENBUSH
      SENIOR UNITED STATES DISTRICT JUDGE